UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| YEVONNE POWERS, | |
| Plaintiff, | |
| v. | Case No. 3:24-CV-794-CCB-SJF |
| LIBERTY MUTUAL INSURANCE COMPANY, | |
| Defendant. | |

## OPINION AND ORDER

Before the Court is Defendant Liberty Mutual Insurance Company's ("Liberty Mutual") Motion to Dismiss (ECF 11) Plaintiff Yevonne Powers' Complaint (ECF 1). Based on the applicable law, facts, and arguments, Defendant's Motion to Dismiss for Lack of Jurisdiction is **GRANTED**. (ECF 11).

### I. RELEVANT BACKGROUND

In December 2020, Plaintiff Yevonne Powers was seeking auto insurance quotes and filled out a form on the website InsuredNation. (ECF 1 at 14). In selecting "Get My Auto Quotes," Plaintiff consented to her information being shared with insurance providers in the website's network and receiving calls and text messages seeking additional information or transmitting insurance quotes. (*Id.* at 13). There were no insurance providers listed in the space below "Providers Include" and Liberty Mutual, a Massachusetts company headquartered in Boston, was not listed on an associated landing page as a "provider." (*Id.*); (ECF 11 at 4). Plaintiff did not authorize or intend to

authorize Liberty Mutual to contact her after she filled out the web form seeking auto insurance quotes. (ECF 1 at 14). Despite this lack of authorization and the fact that Plaintiff's phone number has been on the National Do Not Call Registry since 2006, Plaintiff received a text message and nine phone calls from Liberty Mutual between December 3, 2020 and December 7, 2020. (*Id.* at 6, 12). The phone calls played prerecorded marketing messages trying to get Plaintiff to purchase Liberty Mutual insurance. (ECF 1 at 12). Plaintiff received another text message and eight more phone calls from Liberty Mutual between January 27 and January 31, 2020.[1] (*Id.* at 14).

      Plaintiff alleges that Liberty Mutual is one of the most prolific robocallers in the country, "launching tens of thousands of prerecorded message telemarketing "robocalls" and text messages into the State of Indiana each month." (*Id.* at 1). Plaintiff also alleges that she and other class members have been damaged by these phone calls because the calls invaded their privacy, temporarily seized and trespassed upon the use of their phones, and were a nuisance. (*Id.* at 16). On September 25, 2024, Plaintiff filed suit against Liberty Mutual, on behalf of a Robocall Class and a National Do Not Call Registry Class. (*Id.* at 17). Each class allegedly contains more than 1,000 affected persons in Indiana. (*Id.*). Plaintiff brings claims including violations of the Telephone Consumer Protection Act ("TCPA") and Virginia Telephone Privacy Protection Act ("VTPPA"). On December 30, 2024, Defendant filed the instant motion to dismiss, alleging that this

---

[1] The Court believes these dates are a typographical error and it should say January 27 and January 31, 2021, because the Complaint says that Liberty Mutual called Plaintiff nine times in December 2020 and then that "Liberty made *another* wave of prerecorded message calls to Powers" in January. (ECF 1 at 14) (emphasis added). For consistency, however, the Court used the dates as written in the Complaint. (*Id.*).

Court lacks personal jurisdiction because Liberty Mutual is not at home in Indiana and Plaintiff's claims do not arise out of any alleged conduct by Liberty Mutual in Indiana. (ECF 11 at 3).

## II.  STANDARD

Rule 12(b)(2) allows a party to move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant moves to dismiss under Rule 12(b)(2), the plaintiffs bear the burden of proving that jurisdiction exists. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When a motion to dismiss is decided without an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Id.* (internal citation omitted). But "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783. The court must take all well-pleaded facts in the complaint as true and resolve any factual disputes in the plaintiffs' favor. *Id.* Reasonable inferences must also be drawn in the plaintiffs' favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

Plaintiff brings claims under federal law and Virginia law. Therefore, the Court's subject matter jurisdiction rests on federal question jurisdiction and supplemental jurisdiction. 28 U.S.C. §§ 1331, 1367(a). In a case involving federal question jurisdiction, a "federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant." *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020) (citation omitted).

3

Plaintiff's federal claims arise under the TCPA, "which does not authorize nationwide service process in a private cause of action." *Bilek v. Fed. Ins.*, 8 F.4th 581, 589 (7th Cir. 2021). Therefore, the Court, sitting in Indiana, may exercise jurisdiction only if authorized by Indiana law and by the United States Constitution. *Advanced Tactical Ordnance Sys., LLC*, 751 F.3d 796, 800 (7th Cir. 2014) (citing to Fed. R. Civ. P. 4(k)(1)(A).). Personal jurisdiction is governed by Indiana's long-arm statute, which extends personal jurisdiction to the outer limits of the Due Process Clause of the Fourteenth Amendment. Ind. Trial Rule 4.4(A); *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 548 (7th Cir. 2004).

When deciding whether the exercise of personal jurisdiction comports with the Due Process Clause, the court considers the defendant's relationship to the forum state. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco City*, 582 U.S. 255, 262 (2017). Personal jurisdiction exists when a defendant has established minimum contacts with the forum state so much so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).

Two types of personal jurisdiction exist: general and specific. *Bristol-Myers Squibb Co.*, 582 U.S. at 262. Establishing general jurisdiction is a "high bar" requiring that a defendant's affiliation with a forum be so constant and pervasive that the defendant is considered "at home" in that forum. *Daimler AG v. Bauman*, 571 U.S. at 136. Specific jurisdiction requires that the suit rise from defendant's contacts with the forum. *Bristol-Myers Squibb Co.*, 582 U.S. at 262. Plaintiff does not argue that Liberty Mutual is subject to general personal jurisdiction here, nor does she argue that she obtained "tag" service on Liberty Mutual. (ECF 25 at 1, 18). Thus, for this Court to have jurisdiction over

4

Defendant, it must find that Plaintiff's lawsuit arises from Defendant's contacts with Indiana.

### A.  Specific Personal Jurisdiction

Specific jurisdiction exists "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 744 (1984); *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. 408, 414 (1984)). The defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945) (quotation omitted). This ensures that a defendant is "not [] haled into a jurisdiction solely as a result of 'random,' 'fortuitous', or 'attenuated' contacts." *Burger King Corp.*, 471 U.S. at 475 (internal citations omitted). In sum, specific jurisdiction exists where the requirements below are met:

> (1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities, [] and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

The Supreme Court in *Walden*, however, clearly articulated that it is the "defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." 571 U.S. at 287. In other words, the minimum

5

contacts analysis necessarily looks to the "defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. The Seventh Circuit then makes this point even more explicit in *Advanced Tactical Ordnance*, noting that the question to be asked is whether the defendant has somehow targeted the forum state specifically. 751 F.3d at 802.

**III.    ANALYSIS**

For specific personal jurisdiction to exist, Liberty Mutual must have "purposefully availed" itself of the privilege of conducting business in Indiana or "purposefully directed" its activities at Indiana, the "alleged injury must have arisen from [Liberty Mutual]'s forum-related activities, and jurisdiction "must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673. Additionally, "[f]or cases relying on specific jurisdiction over the defendant, minimum contacts, purposeful availment, and relation to the claim [a]re assessed only with respect to the named plaintiffs." *Mussat v. IQVIA, Inc.,* 953 F.3d 441, 445 (7th Cir. 2020). In other words, the Court will focus on whether Plaintiff's alleged injuries, not the alleged injuries of the two uncertified classes, relate to the forum state.

In analyzing the first prong, whether Liberty Mutual "purposefully directed" its activities at Indiana, the Seventh Circuit has outlined three specific requirements to determine whether there are "minimum contacts" between Defendant and the forum state: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo v.*

6

*Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010); *Lexington Ins. v. Hotai Ins.,* 938 F.3d 874, 878 (7th Cir. 2019).

Plaintiff argues that the recorded calls she received "were a direct result of Liberty Mutual's lead purchasing process and compliance determinations" and that Indiana is a "deliberate and sustained center of telemarketing and compliance decision-making" for Liberty Mutual. (ECF 25 at 15). She alleges that Liberty Mutual employee Ryan Hemker ("Hemker"), an Indiana resident, "designed" and "facilitated the robocalling practices at issue." (*Id.* at 3, 11). Defendant, on the other hand, asserts that Liberty Mutual employs a single employee relevant to its "online data leads and call programs" in Indiana. (*Id.* at 4). According to Defendant, the employee, Hemker, just happens to work remotely from Indiana, but reports to other groups at Liberty Mutual outside of Indiana and never communicated with Plaintiff nor directed that she be contacted. (*Id.* at 4, 10). Defendant argues that a single remote worker relevant to telemarking and lead generation hardly rises to the level of purposeful direction. (ECF 26 at 8). The Court agrees.

The phone calls Plaintiff received were the result of an intentional marketing strategy, but the calls were not placed from Indiana nor were they expressly aimed at Indiana. (*Id.* at 4). Plaintiff filled out a website form and then received text messages and phone calls from a company associated with Liberty Mutual while she was in Virginia. The operation of an interactive website affiliated with Liberty Mutual from *Virginia* does not show that Liberty Mutual has formed a contact with *Indiana. Advanced Tactical,* 751 F.3d at 803. Further, Liberty Mutual could not have known that the effects

7

of its intentional conduct, in initiating marketing calls to Plaintiff in Virginia, would be felt in Indiana. For personal jurisdiction to exist, "[t]he record must show that the defendants targeted the forum state." *Matlin v. Spin Master Corp.*, 921 F.3d 701, 706 (7th Cir. 2019). The record here does not show that Liberty Mutual targeted or purposefully directed its activities at Indiana. *Felland*, 682 F.3d at 673.

Since Plaintiff failed to establish that Liberty Mutual purposefully directed its activities at Indiana, the Court need not turn to the second and third prongs of the specific personal jurisdiction analysis. *Felland*, 682 F.3d at 673. However, even if Plaintiff were to plausibly allege that Liberty Mutual purposefully directed its activities at Indiana, Plaintiff's argument would still fail because Plaintiff's alleged injuries do not arise from Liberty Mutual's Indiana-related activities. *Id.* Plaintiff received the messages and phone calls at issue in Virginia but argues that the marketing strategy that caused the phone calls was coordinated, in part, from Indiana. (ECF 25 at 15). Plaintiff attempts to use Hemker's choice to live in Indiana as evidence that "Liberty has intentionally, systematically and continually exploited the Indiana market." (*Id.* at 12). Liberty Mutual could not have reasonably anticipated being haled into court in Indiana regarding a TCPA claim based on a single remote employee involved in telemarketing or lead generation. *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 716 (7th Cir. 2002).

Additionally, as noted by Defendant, "Plaintiff does not lodge a single allegation tying her claimed injuries—all arising out of the alleged phone calls—to any in-forum activity by LMIC or its employees." (ECF 11 at 11). Plaintiff does allege that "Liberty makes thousands of telemarketing calls per month into Indiana- the same robocalls

8

upon which this lawsuit is based – for the purpose of trying to gain Indiana citizens as new insurance customers." (ECF 25 at 4). Even taking these allegations as true, however, the minimum contacts analysis focuses on the named plaintiff, not the members of the uncertified classes Plaintiff seeks to represent. *Mussat,* 953 F.3d at 445. Therefore, the calls received or not received by Hoosiers do not bolster Plaintiff's argument that her alleged injury arose from Liberty Mutual's Indiana-related activities. Plaintiff has thus not shown that her alleged injuries arose from Liberty Mutual's forum-related activities.

Finally, because Plaintiff has failed to show that Liberty Mutual has sufficient "minimum contacts" with Indiana, the Court does not need to turn to whether traditional notions of fair play and substantial justice would be offended. *Int'l Shoe Co.,* 326 U.S. at 316. The Court thus lacks personal jurisdiction over Liberty Mutual in this case and Defendant's Motion to Dismiss under Rule 12(b)(2) is **GRANTED**.

IV. **CONCLUSION**

For the reasons discussed above, Defendant's Motion to Dismiss is **GRANTED**. (ECF 11).

SO ORDERED on June 23, 2025.

/s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT